UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN JACKSON, JR.,          Case No. _____

                                                     Hon. _____

        Plaintiff,

v.

DENIS McDONOUGH, Secretary,

Department of Veterans Affairs,

        Defendant.

## **COMPLAINT AND JURY DEMAND**

     I.       NATURE OF ACTION

1. Plaintiff Jonathan Jackson, Jr. ("Plaintiff"), by counsel, brings this civil action against Defendant Douglas A. Collins, in his official capacity as Secretary of the United States Department of Veterans Affairs ("VA" or "Defendant"), for discrimination, retaliation, and hostile work environment.

2. Plaintiff is an African American male and a disabled veteran. He has multiple disabilities, including ulcerative colitis and service-connected anxiety, which substantially limit major life activities.

3. Defendant subjected Plaintiff to heightened scrutiny and escalating discipline; denied reasonable accommodations (including temporary telework and adjustments related to his medical needs); removed duties and professional opportunities; and denied Plaintiff advancement in his career-ladder position. These actions occurred

1

after, and because, Plaintiff requested accommodations and complained about discrimination and harassment.

II.  JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

5. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and § 794a(a)(1).

6. Plaintiff has exhausted administrative remedies and satisfied all conditions precedent to suit, or such conditions have been waived. Plaintiff received the VA's Final Agency Order adopting the EEOC Administrative Judge's decision on or about October 29, 2025, and files this action within ninety (90) days of receipt, as permitted by 42 U.S.C. § 2000e-16(c) and 29 U.S.C. § 794a(a)(1).

7. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(e) because the unlawful employment practices occurred in this District and Plaintiff worked in this District.

III. PARTIES

8. Plaintiff Jonathan Jackson, Jr. is an adult resident of Kalamazoo, Michigan.

9. Defendant Douglas A. Collins is the head of the Department of Veterans Affairs and is the proper defendant for Plaintiff's federal-sector Title VII and Rehabilitation Act claims.

IV.     FACTUAL ALLEGATIONS

10. Plaintiff began employment with the VA in or about May 2018. He later worked as a Medical Support Assistant in the VA call center from approximately October 2020 through December 2021.

11. On or about December 19, 2021, Plaintiff was selected into a Fiscal Program Analyst position in the Fiscal Service at the Battle Creek VA Medical Center. The position was a supervisory, career-ladder role at the GS-9 level with advancement potential to GS-11.

12. Plaintiff performed his work successfully and had received favorable recognition and step increases during his federal employment, including end-of-year bonuses in 2019 and 2020. Plaintiff was selected into a career-ladder Fiscal Program Analyst role after demonstrating he could perform core fiscal and administrative functions, and he continued to perform the essential functions of his job, with or without reasonable accommodation.

13. Plaintiff's department was predominantly white and female; Plaintiff was the only African-American male in the unit.

14. Plaintiff's supervisors included Benita "Rosie" Simmons (Deputy Chief of Fiscal Service) and Nancy Konkle-Jackson (Chief of Fiscal Service).

15. Plaintiff has disabilities including ulcerative colitis (with related iron-deficiency anemia) and service-connected anxiety. Defendant was aware of Plaintiff's disabilities through Plaintiff's disclosures, medical documentation, and requests for reasonable accommodation.

16. Plaintiff disclosed his disability to management, including Defendant's supervisory officials, during the spring of 2022 (including the February/March 2022 timeframe), and thereafter repeatedly requested understanding and reasonable workplace flexibility when symptoms flared.

17. Plaintiff's conditions include ulcerative colitis and related anemia, as well as anxiety and other symptoms that can be exacerbated by stress. His ulcerative colitis is unpredictable and can require urgent and frequent restroom breaks and can cause pain, fatigue, and difficulty concentrating—limitations that directly affect major life activities, including normal bowel function.

18. Shortly after Plaintiff entered the Fiscal Program Analyst role, Defendant began issuing a series of write-ups and counseling memoranda for minor, subjective, or inconsistently enforced expectations.

19. On March 8, 2022, Plaintiff was written up for submitting an IT request for a third computer monitor, which was characterized as "overstepping the chain of command."

20. On March 25, 2022, Plaintiff was disciplined for allegedly maintaining an "inadequate" training log, despite Plaintiff being present in the payroll office for the required time and submitting a rebuttal.

21. On April 12, 2022, Plaintiff was written up for watching a video on his phone during downtime with the volume muted, even though similar conduct was tolerated by others and a television was present in the office.

22. On April 14, 2022, Plaintiff received a 90-day evaluation stating that his supervisor would not select him again for the position and asserting he was not making satisfactory progress, including purported "chain of command" concerns.

23. Plaintiff complained internally about harassment and discrimination and sought assistance through VA Resolution Management and EEO channels.

24. Plaintiff initiated EEO counseling on or about July 14, 2022, and filed a formal EEO complaint on or about August 12, 2022 (Agency No. 200J-515-2022-147218). Plaintiff later amended his complaint to include additional related events, and the matter proceeded under EEOC No. 471-2023-00075X.

25. On September 30, 2025, the EEOC Administrative Judge (Trek K. Carethers) issued an order granting the Agency's motion for summary judgment in the administrative proceeding. On October 29, 2025, the VA's Office of Employment Discrimination Complaint Adjudication issued a Final Order accepting and fully implementing the Administrative Judge's decision in Agency No. 200J-515-2022-147218 / EEOC No. 471-2023-00075X, and served that Final Order by email. Plaintiff brings this action for de novo review within the time permitted by law.

26. Defendant escalated its disciplinary campaign in July 2022 by issuing multiple written counseling memoranda within days – including two on July 14, 2022, and another on July 20, 2022 – over minor, subjective, or inconsistently enforced expectations, while ignoring Plaintiff's known disability-related limitations and requests for workplace flexibility. Defendant also issued a separate July 14, 2022 counseling memorandum accusing Plaintiff of leaving the Fiscal office unsecured

during an office picnic, even though Plaintiff did not attend and the event left the office empty.

27. One July 14, 2022 counseling memorandum attacked Plaintiff's timekeeping and validation work and cited, among other things: (a) an overtime-correction request raised on or about July 5, 2022; (b) alleged failures to timely enter and validate time in VATAS for PPE 14 (including an incident in which a newly entered employee did not receive pay); and (c) an allegation that a supervisor could not certify time because entries—other than holidays—had not been entered by the ninth day of the pay period. Plaintiff contends there was no written policy requiring 100% validation by Wednesday close of business, timekeepers are not typically at 100% validation by Wednesday, and at least one white female employee had previously stated she does not validate until Thursday morning.

28. Defendant also removed Plaintiff from an interview panel on July 14, 2022 on the asserted basis that Plaintiff had not validated timesheets, even though Defendant had already reassigned validation duties to another employee and validation practices varied among employees. The removal denied Plaintiff a professional opportunity and was part of Defendant's pattern of stripping Plaintiff of duties and visibility while building a paper trail against him.

29. On July 20, 2022, Plaintiff arrived at work at approximately 8:00 a.m. and was accused of spending excessive time away from his desk shortly thereafter. Coworkers reported seeing Plaintiff enter a supervisor's office and later claimed he was away from his workstation for an estimated 30–40 minutes; Plaintiff maintains that any time away included urgent restroom needs and brief, work-related

interactions. Defendant nevertheless treated Plaintiff's movements and bathroom use as misconduct, despite Plaintiff's known medical condition, and without reliable timekeeping or objective evidence to support the accusations.

30. In or around July 2022, Plaintiff believes his co-worker Danielle Hawthorne disclosed information about him to Supervisor Simmons, and Plaintiff observed Simmons using some of Plaintiff's statements verbatim in written counseling.

31. In July 2022, Simmons told Plaintiff that, if she had the opportunity, she would not have Plaintiff in the position he held—an explicit statement of hostility toward Plaintiff's continued employment in that role.

32. Defendant monitored and scrutinized Plaintiff's bathroom use and movements – conduct directly connected to manifestations of Plaintiff's disability – and treated it as misconduct rather than engaging in a lawful, individualized assessment or accommodation process. Management's monitoring and "comings and goings" scrutiny were not applied in the same way to similarly situated employees.

33. Plaintiff requested reasonable accommodations, including temporary telework while his EEO matter was pending and adjustments related to bathroom access and medical flare-ups. Plaintiff also sought accommodation-related workplace flexibility connected to his anxiety, including requesting HR presence for certain meetings. Defendant denied Plaintiff's requests, including denying work-from-home despite Plaintiff's disabilities and medical advice, and did not engage in a timely, good-faith interactive process. Plaintiff appealed the denial, which proceeded to Assistant Director Steven Dots after Plaintiff's supervisor's superior recused herself; during that process, Plaintiff received irregular communications

7

(including a request for an unofficial conversation via personal cellphone) and continued denials without meaningful explanation.

34. From July 20, 2022 through approximately October 3, 2022, Plaintiff was unable to report to work and was not permitted to work from home.

35. After Plaintiff pursued EEO remedies and accommodation requests, Defendant continued adverse actions, including imposing requirements not imposed on others (such as daily logs), interfering with Plaintiff's ability to perform job functions, restricting or delaying access to necessary equipment and tools, and isolating Plaintiff from the department (including physical isolation upon his return to the workplace in or around October 2022).

36. Defendant also removed or withheld supervisory responsibilities and then used the resulting 'performance' narrative to justify denying Plaintiff advancement in his career-ladder position. Human Resources advised that Plaintiff should have been supervising employees from the outset and that removal of those duties was improper, yet Defendant nevertheless removed duties and later attempted to rate Plaintiff as less than successful; Human Resources rejected that effort due to the lack of supporting documentation.

37. On or about January 18, 2023, Defendant denied Plaintiff advancement to the GS-11 level and/or used alleged performance concerns – developed through biased scrutiny and denial of tools and duties – as the stated basis.

38. 38. Defendant also issued additional counseling memoranda in February 2023. For example, management required Plaintiff – unlike his peers – to complete and submit daily logs of his work, then issued counseling on or about February 6, 2023 when

Plaintiff allegedly did not submit the logs on the timeline demanded. Defendant also issued counseling in early-to-mid February 2023 after Plaintiff missed or declined a one-on-one meeting; Plaintiff had requested HR presence due to his anxiety and discomfort meeting alone with management, and HR declined to attend.

39. Similarly situated non-Black and/or female employees, including Jessica Metheny and Michael Burns, were not disciplined or monitored in the same manner for comparable conduct and were not subjected to the same escalating scrutiny and barriers to advancement; for example, validation timing practices were not enforced against them, comparable downtime conduct was tolerated, and they were not singled out with daily-log requirements or disability-linked monitoring.

40. Defendant's actions were motivated by Plaintiff's race and sex, Plaintiff's disabilities, and in retaliation for Plaintiff's protected activity, and they materially changed the terms and conditions of Plaintiff's employment.

41. Plaintiff incurred periods of leave without pay and medical-related leave after the July 2022 events, including leave without pay from approximately July 20, 2022 through October 3, 2022, which Plaintiff attributes to the hostile and destabilizing conditions created by Defendant's actions.

42. Plaintiff also suffered wage losses from the denial of the GS-11 promotion beginning on or about January 16, 2023 through at least November 18, 2023, including until he later obtained a GS-11 HR Specialist position (effective November 4, 2023), as well as loss of performance bonuses and related benefits.

## COUNT I

## DISABILITY DISCRIMINATION (REHABILITATION ACT)

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act.

45. Plaintiff was qualified for his position and performed his job satisfactorily, with or without reasonable accommodation. Plaintiff's selection into a career-ladder analyst role, prior step increases and bonuses, and Human Resources' rejection of unsupported attempts to downgrade his performance, all support that Plaintiff was meeting legitimate expectations and could perform the essential functions of the job.

46. Defendant subjected Plaintiff to adverse employment actions, including repeated and escalating discipline over minor, subjective, or inconsistently enforced expectations; heightened monitoring tied to disability-related needs (including restroom use); removal from professional opportunities (including an interview panel); removal/withholding of duties, tools, equipment, and supervisory responsibilities; physical isolation; denial of reasonable accommodations; leave without pay; and denial of advancement in Plaintiff's career-ladder position (including denial of promotion/advancement to GS-11).

47. Defendant acted because of Plaintiff's disability, and/or with deliberate indifference to Plaintiff's federally protected rights, in violation of the Rehabilitation Act. The challenged discipline and monitoring were directly connected to disability manifestations (including restroom needs), Defendant disregarded medical documentation and failed to conduct an individualized

assessment, and Defendant denied reasonable accommodations that would have enabled Plaintiff to perform his job without undue hardship—facts that support a plausible inference that disability was a motivating factor in Defendant's adverse actions.

## COUNT II

### FAILURE TO ACCOMMODATE (REHABILITATION ACT)

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Defendant knew of Plaintiff's disabilities and Plaintiff's need for accommodation.

50. Plaintiff requested reasonable accommodations, including temporary telework/work-from-home during periods of flare-ups and while his EEO matter was pending, flexibility to address urgent restroom needs without discipline, and related workplace adjustments tied to his medical condition and anxiety (including requests for HR presence for certain meetings).

51. Defendant denied reasonable accommodations, delayed or obstructed the accommodation process, and failed to engage in a timely, good-faith interactive process, issuing discipline and monitoring instead of assessing reasonable alternatives, and providing little to no explanation for denials.

52. Defendant's failure to accommodate violated the Rehabilitation Act.

## COUNT III

## RETALIATION (TITLE VII AND REHABILITATION ACT)

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Plaintiff engaged in protected activity, including requesting reasonable accommodations; complaining internally about harassment and discrimination; seeking assistance through Resolution Management; initiating EEO counseling on or about July 14, 2022; filing a formal EEO complaint on or about August 12, 2022; and amending/pursuing his EEO matter thereafter.

55. Defendant knew of Plaintiff's protected activity. Plaintiff's supervisors and management officials were involved in, notified of, and/or referenced Plaintiff's internal complaints, accommodation requests, Resolution Management involvement, and EEO activity.

56. Defendant subjected Plaintiff to materially adverse actions after Plaintiff engaged in protected activity, including accelerated and escalating discipline (including multiple counseling memoranda in July 2022 and February 2023), heightened monitoring and scrutiny, denial of accommodations, interference with job performance (including removal/withholding of duties, tools, and equipment), workplace isolation, leave without pay from approximately July 20, 2022 through October 3, 2022, and denial of advancement/promotion to GS-11 on or about January 18, 2023.

57. The timing and sequence of Defendant's actions, together with disparate enforcement, shifting standards, and other evidence of animus, establish a causal connection between Plaintiff's protected activity and Defendant's adverse actions. Defendant's escalation closely followed Plaintiff's complaints and

accommodation/EEO activity, and Defendant enforced unwritten expectations against Plaintiff while tolerating comparable conduct by others—supporting an inference of retaliatory motive.

58. Defendant's retaliation violated Title VII and the Rehabilitation Act.

COUNT IV

RACE DISCRIMINATION (TITLE VII)

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Plaintiff is a member of a protected class (African American).

61. Plaintiff was qualified for his position and performed it satisfactorily, as shown by his selection into the Fiscal Program Analyst role, prior step increases and bonuses, and his ability to perform essential functions with or without reasonable accommodation.

62. Defendant subjected Plaintiff to adverse employment actions, including heightened scrutiny, repeated discipline over minor or inconsistently enforced expectations, denial of professional opportunities and advancement, workplace isolation, and interference with job performance (including removal/withholding of duties and tools), actions that materially affected the terms and conditions of employment.

63. Similarly situated non-Black employees were treated more favorably for comparable conduct. For example, non-Black employees were permitted to follow validation timing practices without discipline, comparable downtime conduct was tolerated, and similarly situated employees were not subjected to daily-log

requirements, disability-linked monitoring, or the same escalating disciplinary campaign.

64. Defendant's actions were taken because of Plaintiff's race, in violation of Title VII. Plaintiff was the only African American male in a predominantly white unit, and the disparate enforcement, differential discipline, and denial of opportunities plausibly support an inference that race was a motivating factor in Defendant's actions.

## COUNT V
## SEX DISCRIMINATION (TITLE VII)

65. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Plaintiff is a member of a protected class based on sex (male).

67. Plaintiff was qualified for his position and performed it satisfactorily, with or without reasonable accommodation, as shown by his selection into the role, prior favorable recognition, and his ability to perform essential functions.

68. Defendant subjected Plaintiff to adverse employment actions and disparate enforcement compared to similarly situated female employees, including heightened scrutiny, repeated discipline, denial of professional opportunities and advancement, and requirements (such as daily logs and validation timing enforcement) that were not imposed on similarly situated female employees.

69. Defendant's actions were taken because of Plaintiff's sex, in violation of Title VII. Plaintiff worked in a predominantly female unit and was subjected to disparate enforcement and differential treatment compared to similarly situated female

employees, supporting a plausible inference that sex was a motivating factor in Defendant's actions.

## COUNT VI

HOSTILE WORK ENVIRONMENT (TITLE VII AND REHABILITATION ACT)

70. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Plaintiff was subjected to unwelcome harassment and intimidation based on race, sex, disability, and retaliation, including repeated and escalating discipline unsupported by consistent policy; excessive monitoring and scrutiny (including disability-related bathroom monitoring); removal of duties and professional opportunities; interference with performance through withholding tools/equipment; workplace isolation; and statements reflecting hostility toward Plaintiff's continued employment in the role.

72. The harassment was severe and/or pervasive, involved supervisory actors, occurred over an extended period, and unreasonably interfered with Plaintiff's work performance and altered the terms and conditions of employment – including contributing to periods of leave without pay, emotional distress, and tangible career harm such as denial of advancement.

73. Defendant is liable for this hostile work environment under Title VII and the Rehabilitation Act. Plaintiff complained through internal channels and EEO processes, yet Defendant failed to take prompt and effective remedial action and, instead, permitted and escalated the conduct.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award the following relief:

1. A declaration that Defendant's acts and practices violated Title VII and the Rehabilitation Act;
2. Appropriate injunctive and equitable relief to stop unlawful practices and to make Plaintiff whole;
3. Back pay, front pay, lost benefits, and other make-whole relief to the extent proven;
4. Compensatory damages (including for emotional distress) to the extent permitted by law;
5. Pre-judgment and post-judgment interest as allowed by law;
6. Reasonable attorney's fees and costs; and
7. Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 27, 2026                Respectfully submitted,

                                       CARLA D. AIKENS, P.L.C.
                                       */s/ Carla D. Aikens*
                                       Carla D. Aikens (P69530)
                                       Connor M. Gallagher (P82104)
                                       615 Griswold St., Suite 709
                                       Detroit, MI 48226
                                       (844) 835-2993
                                       carla@aikenslawfirm.com
                                       *Attorney for Plaintiff*